IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO RIBOT,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTOPHER SMITH, M.D.,<br><br>    Defendant. | No. 2:19-CV-1361-JAM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Pending before the Court is Defendant Smith's unopposed motion for summary judgment. See ECF No. 29. The undersigned United States Magistrate Judge recommends that Defendant's motion be granted.

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff Hugo Ribot, a prisoner at Mule Creek State Prison (MCSP), claims that Defendant Christopher Smith, the prison's chief physician, and surgeon, violated his Eighth Amendment rights by showing deliberate indifference to his eye condition. See id. Throughout 2010 and 2011, Plaintiff visited Dr. Tesluk, an eye specialist, for treatment of glaucoma and macular edema in his left eye. See ECF No. 1, pg. 3; see also ECF No. 28-3, pgs. 12-15. Then for six years (2011-2017),

1

Plaintiff did not see Dr. Tesluk for treatment. See ECF No. 1, pg. 1. Following a visit on October 30, 2017, Dr. Tesluk wrote a letter to Defendant Smith, allegedly showing surprise at the six-year gap in treatment and noting the seriousness of Plaintiff's eye condition. See id. at 3. On January 26, 2018, Plaintiff filed Grievance No. 18001040, in which he claimed that Defendant Smith is liable for the six-year delay in treatment and that the delay of medical attention amounted to cruel and unusual punishment resulting in Plaintiff's loss of sight. See id. at 1, 3. Grievance No. 18001040 was appealed and denied through three levels of formal review. See id. at 2.

## II. THE PARTIES' EVIDENCE

### A. Defendant's Statement of Undisputed Facts

Local Rule 260 requires motions for summary judgment to include a separate Statement of Undisputed Facts. L.R. 260(a). Each Statement must enumerate each specific, material fact relied upon in the motion and cite to any document—e.g., a deposition—establishing that fact. Id. Parties opposing motions for summary judgment must reproduce the facts in the moving party's Statement of Undisputed Facts and admit the facts that are undisputed and deny those that are disputed. See L.R. 260(b). The opposing party must include with each denial a citation to any document supporting the denial. Id. Opposing parties may also include concise Statements of Disputed Facts encompassing all material facts over which there is a genuine dispute. Id.

Defendant submits the following statement of undisputed facts (UDF).[1] Defendant, as support, submits exhibits and sworn declarations by Kelly T. Smith, Deputy Attorney General, and Defendant Dr. Smith. See ECF No. 28-2 to 28-3, 29-2.

1. On January 7, 2010, California State Prison Mule Creek (MCSP) referred plaintiff Hugo Ribot to private ophthalmologist Dr. Gregory C. Tesluk, of Modesto Eye Surgery, in Modesto, California because Ribot had vision problems. ECF No. 29-4, pg. 2.

2. Plaintiff Hugo Ribot (Ribot) had macular degeneration in 2004, prior to his incarceration in MCSP. Id.

3. Dr. Tesluk's January 7, 2010 examination found Ribot had lost left eye vision due to "a long-standing retinal vein occlusion." Id.

---

[1] The Court may cite to alleged undisputed facts using UDF and the individual fact's number (e.g., UDF No. 1).

2

4. Dr. Tesluk determined in 2010 that Ribot's left eye macular degeneration was pre-existing and that nothing further could be done for it. Id.

5. In 2011 Ribot's left eye was treated with three injections of Avastin by Dr. Tesluk. Id.

6. After the third, last Avastin shot, Dr. Tesluk found improvement in the left eye vision, but cautioned Ribot "that his vision will always be blurred in the left eye compared to the right eye." Id. at 3.

7. When the prison optometrist found Ribot's eye pressure high, on February 15, 2011, he made an urgent referral to Dr. Tesluk. Id.

8. At Ribot's May 2, 2011 appointment, Dr. Tesluk determined that Ribot had glaucoma in both eyes. Id.

9. After a December 5, 2011 examination, Dr. Tesluk wrote to Dr. Williams at the prison that Ribot's glaucoma had already caused "significant thinning" of retina nerve fiber in each eye. He determined at that time that no additional treatment would improve the left eye. Id.

10. Ribot received continuous optometry care before and after Dr. Tesluk's 2010-11 diagnosis and treatment, including regular glaucoma examinations by the MCSP optometrists. Id.

11. Ribot filed grievances in 2014 and 2016 that he had trouble getting his glaucoma eyedrop medication on a number of occasions. The 2014 grievance was withdrawn as "resolved." Dr. Smith responded to the 2016 grievance that Ribot's refills would be filled. Id. at 4.

12. Ribot has been and is currently monitored and treated through the MCSP medical chronic care program. Id.

13. Ribot's vision in his right eye was unchanged between the 2010 visit with Dr. Tesluk and October 2017. Id.

14. Ribot has never met or communicated with Dr. Smith. Dr. Smith never examined or personally treated Ribot. Id.

15. Ribot did not personally tell Dr. Smith he wanted to see an eye specialist. Id.

16. Ribot saw a prison optometrist when he requested to be seen. Id. at 5.

17. Ribot has not had eye pain since his 2010 visit with Dr. Tesluk. Id.

18. Ribot's left eye vision remained bad since 2010 due to its preexisting condition. Id.

19. Ribot had cataracts when he was seen by Dr. Tesluk on January 7, 2010. Id.

20. Ribot's cataracts caused Ribot's vision to worsen after 2010. Id.

21. Ribot received cataract surgery for his right eye in October 9, 2018 and for his left eye November 19, 2019, which improved his vision. Id.

22. Ribot's allegation of deliberate indifference is founded solely on Dr. Tesluk's letter of October 30, 2017 to the institution stating that he had not seen Ribot for six years. Id. at 6.

23. Dr. Tesluk determined in October 2017 that Ribot's eye and visions conditions were unchanged since, but performed a laser surgery to attempt to address the glaucoma pressure. Id.

24. Ribot did not file a grievance that he had not seen Dr. Tesluk until more than six years after his 2011 visit to Dr. Tesluk. Id.

25. Ribot filed a grievance that he had not seen Dr. Tesluk for six years on January 26, 2018, more than 30 days after Dr. Tesluk's October 30, 2017 letter and past the deadline for filing a grievance that he had not seen Dr. Tesluk for six years. Id.

26. Ribot's eyesight is not a disability. He is able to read print. Id.

27. Defendant Dr. Smith did not cause any injury to Ribot. Id. at 7.

### B. Plaintiff's Noncompliance with Local Rule 260(b)

Defendant properly included a Statement of Undisputed material Facts alongside his motion for summary judgment. ECF No. 29-4. Plaintiff, however, failed to properly reproduce Defendant's Statement of Undisputed Facts admitting facts that are undisputed and denying those that he contends are disputed. Plaintiff, by failing to respond to the motion for summary judgment, has not complied with Rule 260(b). The Court deems Plaintiff to have admitted those facts not disputed in Defendant's Statement of Undisputed Facts. See, e.g., Fed. R. Civ. P. 56(e); Beard v. Banks, 548 U.S. 521, 527 (2006) ("[B]y failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); Brito v. Barr, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020); see also Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). Accordingly, the Court accepts Defendant's Statement of Undisputed Facts Nos. 1-27 as true and undisputed.

///

///

///

# III. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material fact . . . . Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## IV. DISCUSSION

In his motion for summary judgment, Defendant argues: (1) Plaintiff failed to exhaust administrative remedies because he did not submit a timely inmate grievance regarding Defendant's alleged deliberate indifference; and (2) Defendant's actions did not constitute deliberate indifference to Plaintiff's medical needs. See ECF No. 29-1.

**A.     Exhaustion**

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate.  See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.  548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90.  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.  When reviewing exhaustion under California prison regulations which have since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress. . . ." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior California regulations).

/ / /

/ / /

7

A prison inmate in California satisfies the administrative exhaustion requirement for health care grievances by following the procedures set forth in §§ 3999.225-3999.237 of Title 15 of the California Code of Regulations. In California, inmates may file grievances regarding "health care policies, decisions, actions, conditions, or omissions that have a material adverse effect on their health or welfare." Cal. Code Regs. tit. 15, § 3999.226(a). See Munoz v. Cal. Dep't of Corr., No. CV 18-12064-CJC (KS), 2020 WL 5199517, at 19-20 (C.D. Cal. July 24, 2020) (describing the two-step process). First, the inmate must submit their grievance on the proper form and describe the specific complaint that has had a material adverse effect on their health or welfare. See Cal. Code Regs. tit. 15, § 3999.227(a). Munoz, 2020 WL 5199517, at 19. The grievant must submit the form to the "HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of: (1) the action or decision being grieved, or (2) initial knowledge of the action or decision being grieved." Cal. Code Regs. tit. 15, § 3999.227(b). Second, "[i]f dissatisfied with the institutional level health care grievance disposition, the grievant may appeal the disposition . . . to HCCAB [Health Care Correspondence and Appeals Branch] . . . within 30 calendar days[.]" Id. § 3999.229(a); Munoz, 2020 WL 5199517, at 20.

The HCGO and the HCCAB have discretion to accept grievances filed outside the 30 day time limit if it is determined that the grievance merits further review "for reasons including, but not limited to: (1) Good cause exists for untimely submission of the health care grievance[,]" or "(2) "Issues stated in the health care grievance allege facts that warrant further inquiry." Cal. Code Regs. tit. 15, § 3999.228(d) (HCGO), § 3999.230(d) (HCCAB). If prison officials accept and render a decision on the merits of a grievance, despite a potential procedural flaw, at each available step of the administrative process, then the PLRA requirement of administrative exhaustion is satisfied. See Reyes v. Smith, 810 F.3d 654, 657-58 (9th Cir. 2016) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state . . . and defendants cannot rely on the failure to exhaust defense." (quoting Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011))); Wilson v. Zubiate, 718 Fed. Appx 479, 481-82 (9th Cir. 2017). A decision on the merits must discuss the substance of the grievance. See Wilson, 718 Fed. Appx at 481-82; Semtek

Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 501-02 (2001) ("The original connotation of an 'on the merits' adjudication is one that actually 'pass[es] directly on the substance of [a particular] claim' before the court." (quoting Restatement (Second) of Judgments § 19, comment a, at 161 (1980))).

Plaintiff alleges in his complaint that he exhausted his administrative remedies. See ECF No. 1, pg. 1. Defendant argues that, because Plaintiff's grievance was untimely, it does not satisfy the exhaustion requirements. See ECF No. 29-1, pg. 13. Specifically, Defendant contends:

> Not until January 26, 2018, more than two months after Dr. Tesluk's October 30, 2017 letter, did Ribot file a health care grievance. Decl. K. Smith, Exh. V. Within a month of Ribot's January 2018 grievance, following defendant Dr. Smith's approval, Ribot had an appointment with Dr. Tesluk. Id. at Exh. AA. However, Ribot appealed his grievance to the institutional level. Id. at Exh. W (March 29, 2019 response), then to the final, department headquarters level of review. Id. at Exh. K (July 27, 2018 response). The denial of the grievance there noted that the month before, at Ribot's chronic care checkup, he had denied vision problems. Id. at Exh. HH ("Denies visual problems…" under "Review of Systems," "HEENT").
> Ribot's grievance, based [sic] Dr. Tesluk's October 30, 2017 letter, was untimely under Cal. Code Regs., tit. 15, § 3999.227(b), which requires the grievance be filed within 30 days of "(1) The action or decision being grieved, or; (2) Initial knowledge of the action or decision being grieved." Because Ribot did not file a proper grievance alleging an injury, action or inaction by the institution, he failed to property exhaust his administrative remedies. Thus, his claim is barred by the PLRA.

Id.

To satisfy the exhaustion requirements under Cal. Code Regs. tit. 15, § 3999.227(b), Plaintiff must have submitted the grievance within 30 days of: (1) the action or decision being grieved, or (2) initial knowledge of the action or decision being grieved. Defendant asserts in his statement of undisputed facts that Plaintiff's allegation of deliberate indifference is founded solely on Dr. Tesluk's letter of October 30, 2017, to the institution stating that he had not seen Plaintiff for six years. UDF No. 22. Plaintiff has not reproduced a statement of undisputed facts in which he challenges this claim. Additionally, Plaintiff's complaint does not contradict the assertion in UDF No. 22. Accordingly, this Court presumes that Plaintiff admits to

the assertion in UDF No. 22 and accepts as an undisputed fact that Plaintiff's allegation of deliberate indifference is founded solely on Dr. Tesluk's letter dated October 30, 2017.

Plaintiff filed his health care grievance with HCGO on January 25, 2018. See ECF No., pg. 1. At the time Plaintiff filed the grievance, more than 30 days had passed since October 30, 2017. Thus, Plaintiff did not submit the grievance within 30 days of the action or decision being grieved. The Court finds nothing in the record suggesting that Plaintiff's initial knowledge of the letter was significantly later than October 30, 2017, such that it would be within 30 days of January 25, 2018, when the grievance was submitted. Plaintiff does not allege in his complaint, nor do the accepted undisputed facts show, that he was made aware of the letter at a date later than October 30, 2017. Because the undisputed facts do not show that Plaintiff's initial knowledge of the letter occurred at a time later than when the letter was sent, this Court presumes that Plaintiff had knowledge of the later at the time it was sent on October 30, 2017. Thus, this Court finds that Plaintiff did not submit the health care grievance within 30 days of the letter being sent or initial knowledge that it was sent.

Despite Plaintiff's failure to satisfy the procedural 30-day requirement, his health care grievance was accepted for review by the HCGO and the HCCAB. ECF No. 35, pgs. 64, 102-03, 107. Prison officials at the HCCAB denied Plaintiff intervention, in relevant part stating:

> Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed. These records indicate you are enrolled in the Chronic Care Program, where your medical conditions and medication needs are closely monitored. Your health records support you have received evaluation and treatment your history of vison concerns and glaucoma, post-surgical intervention, as determined to be medically necessary including, but not limited to, primary care provider (PCP) evaluations, ophthalmology and optometry consultations, and medication.
>
> * * *
>
> You alleged negligent care; however, you did not provide documentation to support your allegation and it is refuted by professional health care staff familiar with your clinical history, as well as a review of your health record. While you may not agree with the clinical decisions of your treatment team, it does not constitute staff misconduct or deliberate indifference to your clinical needs.
>
> * * *

*This decision exhausts your administrative remedies.*

ECF. No. 35, pgs. 64-65 (italics added).

The HCCAB made a decision not to intervene in Plaintiff's case based on the merits of his complaint. The disposition makes no mention of the procedural error by Plaintiff but does comment on the substance of his deliberate indifference claim, the same claim now before the Court. Moreover, the HCCAB specified to Plaintiff that its decision exhausted his administrative remedies. ECF No. 35, pg. 65. The Court finds that because the HCCAB made a decision on the merits of the grievance, the grievance has served its purpose of alerting the state to Plaintiff's complaint and the exhaustion requirement has been satisfied. See Reyes, 810 F.3d at 657-58.

### B. Deliberate Indifference

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

///

///

///

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff claims that, by delaying medical treatment with Dr. Tesluk, Defendant Smith was deliberately indifferent to his eye condition. ECF No. 1, pg. 3. Plaintiff's claim relies entirely on a letter from Dr. Tesluk to Dr. Smith, in which Dr. Tesluk allegedly shows surprise at the six-year delay. See id. at 3; UDF No. 22. As the standards above imply, in order to make a claim for deliberate indifference, Plaintiff must show that Defendant's deliberate conduct could have resulted in further significant injury. Defendant argues that, based on the undisputed facts, the delay of Plaintiff's visit to Dr. Tesluk could not have resulted in further harm to his eye condition because the condition was pre-existing and because the institution provided adequate eye care during those six years. See ECF No. 29-1, pg. 14-16. Defendant also argues that Plaintiff fails to allege a cause of harm. Id. at 17.

Specifically, Defendant argues:

> Ribot's eye conditions alleged in his complaint already existed in 2011. In Dr. Tesluk's October 30, 2017 letter to defendant Dr. Smith, by then MCSP's chief physician and surgeon, nothing had changed in that Ribot still had glaucoma, cataracts and the macular edema. Decl. K. Smith, Exh. M.
> Dr. Tesluk's October 30, 2017 letter does note: "For some reason, he was not returned to see me for a followup [sic] visit for 6 years." Decl. K. Smith, Exh. M. But Ribot provides nothing in his complaint identifying why Dr. Smith should have referred Ribot to Dr. Tesluk at any time during the prior six years. In fact, earlier that month, at his October 1, 2017 check-up, Ribot told his physician that he had no eye problems and questioned why he still needed the glaucoma medication. *Id.* at Exh. J at 14-15. The prison, with Dr. Smith's approval, referred him to Dr. Tesluk anyway for the routine October 30, 2017 examination. *Id.* at Exh. BB.
> Ribot fails to allege any attempt to secure another visit with Dr. Tesluk, much less being affirmatively denied such an examination. At the October 30, 2017 visit, Dr. Tesluk performed a laser surgery to treat elevated eye pressure due to the glaucoma. Decl. K. Smith, Exh. BB. But Dr. Tesluk gives no indication of worsened eyesight in the left eye since the 2011 visit. *Id.*
> Based upon the foregoing, Ribot's claims of deliberate indifference are contradicted by Dr. Tesluk's findings that Ribot's vision loss had occurred long before 2011 and that there was no further degradation of Ribot's vision between 2011 and 2017, summary judgment in favor of the defense should be granted.

\* \* \*

> Ribot had the same glaucoma and other eye conditions before he was first seen in 2010. He had them after and he has them still. He makes no allegation that Dr. Smith did or did not do anything to delay or ignore treatment. UMFs 14, 15, 27. Indeed, Dr. Tesluk, the ophthalmologist, said no treatment was available for his already deteriorated eyesight. Thus,

13

> Ribot's complaint fails to allege any harm or a cause of any harm. His glaucoma and other eye conditions are permanent. They were discovered years ago and treated. He alleges no change in those conditions or how they could have been prevented by anyone, much less the defendant here. Ribot's complaint is that he didn't return to an outside ophthalmologist within a certain time. He alleges no harm flowing from the fact. He can show no cause of any harm.
>
> * * *
>
> Accepting that the prison did not send Ribot to Dr. Tesluk for six years, no harm is alleged as a result, much less a harm arising from Dr. Tesluk not seeing Ribot. There is at most an inference that only Dr. Tesluk could cure Ribot's glaucoma and retinal condition. If that inference is considered, no evidence supports it. Optometrists regularly provide the monitoring of glaucoma-caused intraocular pressure and referrals, such as Ribot received at the institution. Decl. K. Smith, Exh. I.
> Ribot does not allege that delay of surgery caused further damage to either of his eyes. The left eye condition was already damaged years before. The right eye condition, whether cataract or glaucoma, was monitored and treated. UMFs 21 & 23. Even though cataract surgery was not called for, the institution provided it for the right eye in an effort to improve the chances of improving chronic cataract condition. Decl. K. Smith, Exhs. Q & CC. Were Ribot to allege, which he does not, that surgery was somehow delayed, the "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Board of State Prison Commissioners*, 766 F.2d 404, 406 (9th Cir. 1985).
> Ribot is unable to raise a material issue of fact because it is clear from the letters referenced by his complaint that his condition was pre-existing, ongoing and incurable. UMFs 2, 3. Even if he could allege a worsened condition, Ribot is unable to raise a material issue of fact that defendant Dr. Smith was personally indifferent, must less deliberately indifferent, to Ribot's medical care. UMFs 14, 15, 27. Dr. Smith, once he was the prison's chief physician and surgeon, responded to Ribot's needs with referrals and responses. Decl. Dr. Smith, ¶¶ 14-15. Therefore, the complaint lacks the fundamental element of causation.

ECF No. 29-1, pgs. 15-18.

The Court agrees with Defendant. The Court finds that, based on UDF Nos. 1-27, which the Court accepts as undisputed, Defendant's conduct does not amount to deliberate indifference under the Eighth Amendment. Because Plaintiff was given regular care by prison medical staff, Plaintiff was not completely denied medical attention. Further, Plaintiff's condition was pre-existing, and the undisputed facts do not show that Plaintiff suffered a further injury due to not seeing Dr. Tesluk for six years. Plaintiff's complaint amounts to a difference of opinion with prison officials concerning the appropriate course of treatment, but does not give rise to an Eighth Amendment claim. Plaintiff has not provided facts showing that Defendant had a

14

sufficiently culpable mind to violate the Eighth Amendment. Thus, Plaintiff has failed to provide a material fact establishing the subjective prong of deliberate indifference. By not responding, Plaintiff admitted to Defendant's statement of undisputed facts. Based on these facts, the Court finds there is no genuine issue of material fact relating to Defendant's conduct. Accordingly, summary judgment in Defendant's favor is appropriate.

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion for summary judgment, ECF No. 29, be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to the objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 8, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE